BRZEZINSKI and others, Respondents, vs. LAKESIDE PACK-
ING COMPANY, Appellant.

*September 23—October 20, 1925.*

*Appeal: Special verdict: Form: Complaint by party submitting question: Sales of crops to be grown: Inability of seller to make full delivery: Evidence: Sufficiency: Accord and satisfaction.*

1. The party drafting a special question to be submitted to the jury may not complain of its form. p. 657.
2. The evidence in this case is *held* to show that the sellers of pickles under a contract which relieved them from liability if they were unable to deliver for reasons beyond their control were able to make deliveries in excess of those actually made, entitling the buyer to recover on his counterclaim in the sellers' action on the contract. p. 658.

3. The evidence is also *held* not to sustain a claim that an oral contract for the purchase and sale of pickles constituted an accord and satisfaction of the buyer's rights under a prior written contract which the sellers were unable to fully perform. p. 660.
4. An accord and satisfaction must be pleaded, and the issue thereon must be tried. p. 660.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Modified and affirmed.*

The appeal is from a judgment in favor of the plaintiffs for the sum of $3,054.18.

Plaintiffs are copartners and are engaged in the pickle business at Krakow, while the defendant is a Wisconsin corporation located at Manitowoc and engaged in the canning business. On the 7th day of March, 1923, the parties entered into a written contract by which the plaintiffs agreed to sell and deliver to the defendant 300 casks of field-run genuine dill pickles, three and one-half inch to five and one-half inch, 1923 pack, at $11 per cask, to be delivered during the fall. Plaintiffs agreed to provide for sufficient acreage to cover all goods sold for delivery during the prospective season. The contract contained a provision that if on account of the shortage of sellers' crops, or other reasons beyond their control, they were unable to deliver the full amount provided for in the contract, then in that event the buyer would accept a *pro rata* delivery with other purchasers of all grades covered by the contract without claim for damages. While the crop for 1923 was abundant, weather conditions in the early part of October, when the crop was ready for picking, were adverse, with the result that the great bulk of the crop could not be harvested. There were, however, four favorable days in October during which pickles could be successfully harvested, but the period was considerably below that required.

The evidence also shows that the trade recognizes two well-defined classes of pickles, the one known as the vat run,

measuring from one and one-half to three and one-half inches, and the other the field run, measuring from three and one-half to five and one-half inches. The vat-run pickles are considered the more valuable and command a higher price in the market. It also appears that within these classes are certain grades which depend upon size and form.

Of the 300 casks of pickles provided for by the contract plaintiffs delivered 140 casks, which were accepted by the defendant. After delivering the 140 casks the plaintiffs claimed that they had exhausted their crop of field-run pickles and were unable to fulfil the balance of their contract. With the exception of the contract made with defendant, plaintiffs had no other contract to furnish field-run pickles from their 1923 crop. There is also evidence to the effect that the pickles are sorted and graded by the farmers, who are the producers, prior to and at the time of their delivery to the factory, and that the plaintiffs owned and operated a sorting machine, where they at times re-sorted the pickles obtained from the producers. When pickles are sorted they are not measured by a tape line or a rule, but the sizes and grades are approximated; so that frequently in one mass of pickles sold as vat-run pickles, specimens appear which are somewhat in excess of the regulation size; and what is true of the vat-run pickles may also be said of the field-run pickles. Owing to the shortage of the 1923 crop the price of field-run pickles rose to $18 per cask in the market, so that the difference between the contract price and the market price for the field-run pickles was $7 per cask.

Upon ascertaining the shortage of the crop plaintiffs notified the defendant that they were unable to make further deliveries under the contract. The following appears from the testimony of *Julius Brzezinski*, one of the plaintiffs:

"*Q.* Did you talk with Mr. Smalley [the representative of the defendant] about certain 1,500 and 1,800 and 1,900 count pickles you had? *A.* Yes, I told him they were a vat run. They came from the vat run. From the vat-run

pickles we took the largest pickles. From the vat run I sold Mr. Smalley 112 of the 2,100 count, that is, nineteen to twenty-one, the average cask. I told him I would sell him for 1,800 counts. He asked me how much I want and I asked him $21, I have been offered for them, and he said, 'No, you cannot fill the contract. I will give you $19.' I said, 'How much you offer me?' and he said '$19;' and I said, 'All right, Mr. Smalley, we will do some more business.' I said, 'There is more than 1,500 and we will let it go at 1,500.' He said, 'I will give you $17 for them.' Thirty-nine casks of this class, and he was well satisfied. I sold him thirty-nine casks of about 1,500 count for $17. These were re-sorted pickles. The rest were $19 per cask."

The witness also testified that the 1,800 and 1,900 count casks were in reality 2,100 counts, and that he would sell them as 1,800 counts; and that the 1,500 counts in fact overran such count by a considerable number. That this oral contract was entered into by the defendant was substantially conceded by Smalley, the representative of the defendant, on the trial. The plaintiffs, therefore, in their complaint pleaded the oral contract and demanded recovery in accordance with the terms thereof. The defendant in its answer alleged that the 151 casks of pickles were field-run pickles; that they were furnished under the original contract in writing; and denied the oral contract. Defendant also interposed a counterclaim, in which it alleged that the plaintiffs grew and had on hand a quantity of pickles sufficient in number and amount to comply with the written contract, but that notwithstanding such fact they breached such contract; and that by reason of such breach the defendant sustained damages in the sum of $1,200.

Defendant's counsel requested, and the court submitted, the following question to the jury in the special verdict: "Did the plaintiffs in the fall of 1923 have from their acreage sufficient pickles to make 294 casks of field-run dill pickles, three and one-half to five and one-half inches?" To which the jury answered "No."

Further facts will be referred to in the opinion.

For the appellant the cause was submitted on the brief of *Hougen, Brady & Meyer* of Manitowoc.

For the respondents there was a brief by *Lehner & Lehner* of Oconto Falls, and oral argument by *Adolph P. Lehner*.

DOERFLER, J.   The plaintiffs having established the oral contract, and the defendant having admitted the same on the trial, leaves for our consideration solely the issue formed upon the counterclaim.   The only significance that can be attached to the answer of the jury to the sole question submitted to it in the special verdict is the fact that the jury found that the plaintiffs could not comply with the written contract to the extent of furnishing 294 casks of field-run pickles.   If the plaintiffs could not furnish 294 casks of such pickles, manifestly they could not furnish the 300 casks specified in the written contract.   The figure 294 was not warranted under any view which the evidence presents.   Defendant's counsel and the court evidently were of the mistaken opinion that the sum total of the 140 casks and the 151 casks amounted to 294 casks, whereas in fact it amounted to but 291 casks.   To properly meet the issue the inquiry should have been made to the jury requiring them to find the number of casks which the plaintiffs could supply in the fall of 1923, of the contract-size pickles.   Defendant's counsel, however, have little reason to complain of the form of the question actually submitted, because they drafted the question and requested its submission.

The court found that the 151 casks delivered under the oral contract contained pickles that were taken from the vat-run pickles by the machine re-sorting process, and that they were therefore of a vat-run and not of a field-run pickle.   *Julius Brzczinski,* one of the plaintiffs, testified in substance that the farmers sort the pickles; that they are not measured with a tape line or rule; that under the usual practice, pickles of a trifling larger size than three and one-half inches are included in the vat run; and that the pickles constituting the 151 casks were obtained by the

machine re-sorting process out of the vat-run pickles. He also testified that at the time of the oral contract he notified Smalley, the representative of the defendant, that the 151 casks were taken from the vat run, and were therefore vat-run pickles. This view was adopted by the court in its opinion, and judgment was ordered in plaintiffs' favor in accordance with the prayer of the complaint. The conclusions arrived at by the court as to the 151 casks are amply supported by credible evidence. Plaintiffs' testimony also shows that the pickles furnished as 1,800 and 1,900 count to the cask, in reality showed a count of 2,100; that those sold and delivered as containing a count of 1,500 to the cask, in reality were of a much higher count.

The witness *Brzezinski*, on cross-examination, testified that the 2,100 count pickles to the cask are three or three and one-half inches in size; that those of the 1,800 count are about three and three-fourths inches; that the 1,000 count are about four and three-fourths to four and one-half inches; that the 1,200 count are about four and one-half inches; that the 1,500 count are about four inches; that the only contract plaintiffs had for field-run pickles was the written contract with the defendant; that in addition to the 291 casks actually furnished, plaintiffs had on hand thirty-one casks of the 1,000 count; fifteen casks of the 1,200 count; thirty-two casks of the 600 count; five casks of the 1,600 count, and seven casks of the 1,800 count. All of these pickles were derived from the 1923 acreage. No testimony was introduced as to the size of the 600 count per cask pickles. So that, from plaintiffs' own testimony, it appears conclusively that the plaintiffs had on hand, in addition to the 140 casks of pickles furnished under the written contract, fifty-eight casks that answered the description of field-run pickles. These fifty-eight casks do not include the thirty-two casks of the 600 count, because there is no evidence in the record to show the size of these pickles.

At the time when these fifty-eight casks of pickles should

have been delivered under the written contract, the market price of such pickles, owing to the scarcity of the crop, had risen to $18 per cask, thus leaving a difference of $7 per cask between the contract and the market price, which represents the defendant's damage for plaintiffs' breach of contract, and for which it should be allowed the sum of $406; and offsetting this amount from the total due the plaintiffs, namely, the sum of $3,054.18, under the oral contract, leaves the sum of $2,648.18, for which the plaintiffs are entitled to judgment against the defendant, with the costs as taxed in the lower court.

In the argument before this court counsel for the plaintiffs argued that the oral contract constituted an accord and satisfaction. The record does not disclose that such contention was made in the trial court, and the only reference thereto is contained in the opinion of the court. The trial court does not pass upon this question, but merely suggests that the oral agreement might possibly constitute a waiver of defendant's right to damages for breach of contract, or that it *may* amount to an accord and satisfaction. From the evidence it appears that the plaintiffs notified the defendant that they could not furnish in excess of 140 casks of the pickles provided for in the written contract. Under these circumstances the defendant recognized the claim of the plaintiffs of inability to further perform. Plaintiffs made their concession of $2 per cask on the better grade of pickles, which were sold as 1,800 and 1,900 count, and the defendant accepted plaintiffs' proposition believing and with the understanding that the 140 casks were the only pickles which the plaintiffs could furnish and deliver and which complied with the written contract-size pickles. It also appears conclusively from the statement of the witness *Brzezinski* that his consent to the come-down to the price offered by the defendant was actuated by his desire to do further business with the defendant. Plaintiffs' testimony, however, clearly establishes beyond controversy that, in ad-

dition to the 291 casks furnished under the two contracts, they had on hand 58 casks of pickles which answered the call of the pickles specified in the written contract. While plaintiffs, therefore, could not supply the full quota of 300 casks of field-run pickles, they could, in addition to the 140 casks, have furnished the additional 58 casks. The evidence, therefore, does not support the claim of accord and satisfaction. Besides, an accord and satisfaction must be pleaded and the issue thereon must be tried. 1 Ruling Case Law, p. 202, title "Accord and Satisfaction," § 40.

*By the Court.*—The judgment of the lower court is modified in accordance with this opinion, and as so modified affirmed. The defendant is entitled to its costs and disbursements on this appeal.